

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARY W. CONNELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 05 C 5285 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Gary W. Connell seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income ("SSI") disability benefits. The parties cross-move for summary judgment. For the reasons set forth below, Connell's motion is granted, and the Commissioner's cross-motion is denied.

### PROCEDURAL BACKGROUND

Connell applied for SSI benefits on August 15, 2002. His application was denied and he timely requested a hearing before an administrative law judge ("ALJ"). On October 16, 2003, the ALJ held a hearing. On August 27, 2004, the ALJ denied Connell's application. The Appeals Council declined to review the case, rendering the ALJ's decision final. 20 C.F.R. § 404.955. Connell now seeks judicial review.

## STATEMENT OF FACTS

The following facts are drawn from the administrative record.

Connell was born in 1956. Administrative Record ("R.") at 60. He obtained a general education diploma. R. at 96. He worked as a coal miner in the 1980s. R. at 99. After pleading guilty to child molestation charges and violating probation, he was incarcerated between 1991 and 2001. R. at 164, 286. Following release from prison, he was briefly a factory worker, a kitchen helper, and a telemarketer, but was fired because of his forgetfulness and inability to communicate. R. at 99, 286-87, 310. At the time of his administrative hearing, he lived in a free room provided by a homeless shelter. R. at 281-82. His only source of income was from food stamps; he volunteered at the shelter in exchange for bus passes and toiletries. R. at 282-83.

### I. Medical Evidence of Connell's Conditions

In April 2001, Connell began to receive regular psychiatric treatment from the Northwestern Memorial Hospital ("the NMH"). R. at 162. He complained of anxiety, depression related to his criminal conviction, and inability to focus and to deal with stress. R. at 164-54, 169, 176. He was prescribed various anti-depressants, including Celexa, Depakote, Effexor, Neurontin, Paxil, Trazadone, UPA, and Wellutrin. R. at 174-206. Although he did not always take his medications, he felt calmer and less prone to anger when he took them. R. at 189-90, 211-13.

On June 1, 2002, Connell was tested positive for the Hepatitis-C virus. R. at 130. Thereafter, he sought treatment for fatigue several times. R. at 128, 248, 250. His Hepatitis-C treatment was initially postponed out of concerns over side effects it might have on his depression. R. at 222-23. After his psychiatrists from the NMH approved the treatment in April 2003, he began receiving weekly injections of Interferon for Hepatitis-C at the Cook County Hospital ("the CCH").

R. at 225-30. In mid-May, he complained of fatigue and shortness of breath; these symptoms, the CCH doctors suspected, might have been caused by Interferon. R. at 253. His treatment nonetheless continued and his liver condition improved. R. at 211-12. His complaint of depression worsened; in July, he started complaining of suicidal ideations. R. at 211. Yet in September, he reported to the CCH that his earlier suicidal thoughts were resolved by medication provided by the NMH. R. at 269. When he complained again of having daily suicidal thoughts in October, the treatment was suspended pending further psychiatric evaluation. R. at 272.

In connection with his application for SSI benefits, Connell underwent a psychiatric evaluation in October 2002. R. at 140. He was diagnosed with chronic depressive disorder, but his mental conditions and behavior were considered normal. R. at 140-42. In December 2002, he was examined by an agency psychologist. R. at 143-60. According to the examination report, he lacked the ability to follow detailed instructions and to concentrate for extended periods. R. at 158. But he was found capable of performing routine, repetitive tasks. R. at 160. His mental impairments did not match the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.02-04. R. at 154.

## II. The Hearing

Connell went with his friend Elizabeth Smith to the hearing on October 16, 2003. R. at 274. He wanted Smith to represent him. R. at 276. But at the beginning of the hearing, the ALJ disqualified Smith as a representative on the basis that she did not have "sufficient familiarity with the Social Security Act and regulations." *Id.* The ALJ discussed his right to counsel. R. at 277. He decided to proceed *pro se*. R. at 278.

3

Connell testified to his mental impairments. His forgetfulness, combined with his inability to communicate, follow instructions, and stay focused, prevented him from keeping a job. R. at 287. He had difficulties in coping with pressure. R. at 295. He vehemently maintained his innocence of molestation charges; his guilty plea and incarceration contributed to his depression. R. at 288. He had daily suicidal thoughts. R. at 296.

Connell suffered serious side effects from his treatments for depression and Hepatitis-C. His medication for bipolar disorder worsened the conditions of his liver, R. at 290-91; his weekly Interferon injections intensified his depression, R. at 292. After each injection, he was usually forced to remain bedridden for three days. R. at 306.

Connell could take care of his daily living for the most part. He could bathe and dress himself, clean his room, and cook his own meals. R. at 302. As for doing dishes and laundry, he needed a little help from time to time. *Id.* He could do most of his grocery shopping, but needed help with carrying a gallon of milk plus bread loaves. R. at 299, 302. He could help serve food for the residents of the homeless shelter where he volunteered. R. at 283, 299. He had no problem sitting, but could stand continuously for only half an hour. R. at 299. He could walk two or three blocks at a time. R. at 298. He could not climb the stairs to the elevated train without feeling shortness of breath. R. at 286. He must take naps every day. R. at 306.

Smith testified to Connell's good moral character and his difficult life experiences. R. at 307-09. She stated that Connell's need for help put a strain on his friends and the shelter. R. at 309.

The vocational expert answered several hypothetical questions. She was asked whether jobs were available to a 52-year-old individual who had Connell's work experience and education and was limited to simple and repetitive light work (carrying 10 to 20 pounds) without regular, general

4

public contact. R. at 311. She answered in the affirmative, identifying three suitable positions: cleaner (6,500 jobs in the Chicago region), kitchen helper (3,400), and hand packager (9,500). R. at 312. She stated that her answer would be the same if the individual could only handle low to moderate stress. *Id.* But if the individual had to take naps during the day, her answer would be negative. *Id.*

## DISCUSSION

### I. Standard of Review

In Social Security cases, the court limits its review to two questions: (1) whether the ALJ's decision is supported by substantial evidence; and (2) whether the decision is based on the proper legal criteria. *See* 42 U.S.C. § 405(g); *see also Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). The court should give the ALJ's decision "a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)). The court may not re-weigh the evidence or substitute its judgment for that of the ALJ. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Scheck*, 357 F.3d at 699. If the ALJ builds a logical bridge from the evidence to his conclusion, his decision stands. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

### II. The Analytic Framework on Disability

In reviewing Connell's application, the ALJ must follow a five-step process to determine: (1) whether Connell is currently employed; (2) whether he has a severe impairment; (3) whether his

5

impairment matches one listed by the Commissioner; (4) whether he can perform his past work; and (5) whether he is capable of performing any work in the national economy. 20 C.F.R. § 404.1520(a)(4); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must take these steps sequentially, and a conclusive finding at any step that Connell is or is not disabled is dispositive. 20 C.F.R. § 404.1520(a)(4).

Connell's application progressed to step five. To deny the application, the ALJ must demonstrate that Connell could perform a significant number of jobs in the national economy. *Young*, 362 F.3d at 1000. Connell challenges the ALJ's decision on four grounds: (1) his waiver of right to counsel was invalid and the ALJ failed to adequately develop the record; (2) at Step Three, the ALJ failed to analyze his impairments according to the listings; (3) at Step Four, the ALJ failed to properly assess his residual functional capacity; and (4) at Step Five, the ALJ failed to pose hypothetical questions according to his mental impairments. The court addresses these arguments in turn.

### III. Right to Counsel

A claimant for SSI benefits has the right to be represented at administrative hearings. 42 U.S.C. § 406; 20 C.F.R. § 416.1505. He may waive this right. His waiver is valid only if he is given sufficient information enabling him to intelligently decide whether to retain counsel or to proceed *pro se*. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). Sufficient information must include three elements: (1) an explanation of the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency fee arrangement; and (3) the limitation on attorneys' fees to 25% of past-due benefits and required court approval of the fees. *Id.* For a *pro se* claimant, an ALJ has the duty to develop a full record by "scrupulously and

conscientiously" exploring all relevant facts. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). Absent a valid waiver of right to counsel, the Commissioner bears the burden of showing the record is fully developed. *Id.*

Connell contends the ALJ failed to obtain a valid waiver of his right to counsel. But the record reveals he was provided information sufficient to comply with *Thompson*. Over six months before the hearing, the Commissioner sent him a notice explaining in detail his right to counsel. R at 42-46. The notice clearly informed him that a representative could help him "get evidence, prepare for the hearing, and present [his] case at the hearing." R. at 42. The notice not only explained the possibility of free counsel and contingency fee arrangements, it also listed legal services organizations on three separate pages. R. at 44-46. In addition to this notice, the hearing notice dated September 23, 2003 reminded him, in bolded letters, of his right to counsel. R. 48. He does not deny he received these notices before the hearing.

At the beginning of the hearing, the ALJ reminded Connell of the right-to-counsel disclosure in the hearing notice. R. at 226. The ALJ also explained the possibility of free counsel and contingency fee arrangements:

> It is my obligation to advise you that depending on your financial circumstances, you might qualify for some free legal assistance through groups such as the Legal Assistance Foundation or Prairie State Legal Clinic. Alternatively, you could hire a private attorney or representative to represent you and those people can take no money from you up front. They can only work on a contingency fee basis to take cases in social security hearings. Which means, they can only take a portion of any back [b]enefits you would be due, again only if you are successful. And that means, only if you win can they take any money from you and then they ma[y] take up to 25 percent of just those back [b]enefits, or $5,300, whichever is less.

R. at 227. The ALJ's explanation, together with the two notices, satisfies the *Thompson* requirements. *Thompson*, 933 F.2d at 584.

7

Attempting to invalidate his intelligent waiver, Connell argues the ALJ erred in disqualifying Smith as his representative. But the ALJ's decision to disqualify Smith, even if erroneous, does not impact the validity of Connell's waiver. So long as the *Thompson* requirements are met, his waiver is valid.

Connell contends the ALJ failed to adequately develop the record and as a result, he suffered prejudice. During the hearing, the ALJ questioned him in detail regarding his mental and physical conditions, his medical treatments, and his work history. R. at 281-306; *see Binion*, 13 F.3d at 245 (upholding denial of benefits because the ALJ probed into all relevant areas). The ALJ ensured that all medical records were collected. R. at 312-13; *see Binion*, 13 F.3d at 245 ("the ALJ left the record open to obtain [an additional] medical record"). The hearing lasted 50 minutes. *Cf. Thompson*, 933 F.2d at 586 (a 32-minute hearing was too short). The ALJ carried out her "duty to develop the record fully and fairly where the claimant proceeds without counsel." *Binion*, 13 F.3d at 245. Connell's contention must fail.

Connell asserts three claims of prejudice. None has merit. He claims prejudice resulting from the ALJ's failure to (1) allow him to make an argument – as opposed to stating facts – concerning his impairments; (2) offer him an opportunity to comment on the medical records collected after the hearing; and (3) adequately question Smith and offer him the opportunity to question her. Connell's first two claims are utterly without merit because his own testimony covered all aspects of his impairments and the accuracy of the medical records is undisputed. Thus, he cannot demonstrate any "prejudice or evidentiary gap" that may logically result from the ALJ's alleged failure. *Id.* Contrary to his third claim, the ALJ specifically asked Smith to discuss her observations of Connell's mental and physical state. R. at 308. No prejudice may result from the

absence of further testimony by Smith for two reasons. First, Smith's testimony has evidentiary value only to the extent that it supports Connell's testimony of his daily activities; and her general statements did just that. R. at 309 ("[Connell is] very dependent on other people"). Second, the record shows Smith's poor ability to answer questions and hence, her dubious value as a witness. During her testimony, Smith rambled on about the unfairness of Connell's conviction and imprisonment; the ALJ had to interrupt three times to keep her focused on discussing Connell's health conditions. R. at 307-08. Under these circumstances, the ALJ's questioning of Smith, albeit brief, was appropriate. *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) ("how much evidence to gather is a subject on which we generally respect the Secretary's reasoned judgment"). Therefore, the ALJ adequately developed the record. Connell suffered no prejudice as a result of proceeding *pro se*.

### IV. Step-Three Listing of Impairments

In conducting the Step-Three analysis, an ALJ must compare the medical evidence of a claimant's impairments with the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. "[A]n ALJ must discuss the listing[s] by name and offer more than a perfunctory analysis." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002) (ALJ must provide meaningful analysis of the listings).

The listings relevant to Connell's impairments are under § 5.05 (chronic liver disease) and § 12.04 (affective disorders). 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ must consider Connell's impairments, singly or in combination, to determine whether they equal any relevant listings. 20 C.F.R. § 416.926(a). In her decision, the ALJ stated:

9

> Although the claimant has severe impairments, there is no evidence of any physical or mental impairment that meets or equals the requirements of the Listings, singly or in combination. This conclusion is detailed in the medical record, discussed below.

R. at 24. The ALJ's subsequent recitation of Connell's medical records did not refer to any relevant listings, nor did her recitation discuss the severity of his conditions. The ALJ noted that depression was a major side effect of Interferon and that this side effect on Connell was so severe as to stop treatment. R. at 24. But the ALJ did not evaluate how the side effect impacted Connell's depression or whether the discontinuation of treatment worsened his liver condition. As a result, the ALJ failed to analyze whether Connell's adverse reaction to Interferon, singly or in combination with his liver condition, equaled any listings under §§ 5.05 and 12.04. The ALJ's failure renders her Step-Three analysis perfunctory. Thus, the ALJ's decision with respect to Step Three must be remanded. *Scott*, 297 F.3d at 596 (ordering remand because the ALJ's failure to discuss the listing was compounded by perfunctory analysis).

The Commissioner argues the ALJ's Step-Three analysis was unnecessary because agency physicians determined that Connell was not disabled under the listings. But the agency physicians examined Connell in February 2003 – before his Interferon treatment began. R. at 31. Their determination had no bearing on whether Connell's depression and liver condition were aggravated due to the application and discontinuation of the Interferon treatment.

The Commissioner argues the record as a whole supports the ALJ's decision, relying on *Rice v. Barnhart*, 384 F.3d 363 (7th Cir. 2004), and *Sims v. Barnhart*, 309 F.3d 424 (7th Cir. 2002). *Rice* and *Sims* are distinguishable. The ALJ in *Rice* discussed the claimant's conditions in detail, and as a result, the ALJ's Step-Three analysis was not perfunctory. *Rice* 384 F.3d at 370. Here, the ALJ's perfunctory analysis is compounded by her failure to consider Connell's adverse reaction to

10

Interferon. *Rice* is inapplicable. Similarly, the Step-Three determination in *Sims* was upheld because the claimant's appeal was based entirely on her disagreement with the ALJ's evaluation of the evidence. *Sims*, 309 F.3d at 429-31. Connell challenges the Step-Three determination based on the ALJ's failure to address an issue; his challenge does not deal with the ALJ's weighing of the evidence. Thus, the Commissioner's reliance on *Sims* is inapposite.

V.      **Step-Four Residual Functional Capacity Analysis**

To determine a claimant's residual functional capacity, an ALJ must assess whether a claimant has the ability to do sustained work-related physical and mental activities on a regular work schedule – eight hours a day for five days a week. Social Security Ruling ("SSR") 96-8p, at *7 (1996). An ALJ must include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* An ALJ must explain how she resolves material inconsistencies in the evidence and why a complaint of functional limitations cannot be accepted. *Id.*

In her Step-Four analysis, the ALJ noted Connell's complaints of fatigue in his medical records, but found that his testimony was not entirely credible. R. at 27. Without any discussion of the severity of Connell's fatigue, the ALJ concluded he had the residual functional capacity to perform light work. This conclusion fails to meet the requirements under SSR 96-8p. Connell's complaints of fatigue are well supported by his medical records. R. at 126, 138, 197, 228, 25-51, 253, 273. He testified that he must nap every day and his weekly Interferon treatment often required him to stay in bed for three days. R. at 306. In the face of the medical evidence and Connell's testimony, the ALJ failed to explain the basis for her conclusion that Connell was able to perform sustained light work activities. The Commissioner does not point to any evidence in the record

demonstrating Connell's ability to overcome his fatigue and perform sustained work activities on a regular work schedule. The ALJ's findings about Connell's mental residual functional capacity are similarly defective, in light of the failure to discuss the interrelationship between Interferon treatment and depression. Accordingly, the ALJ's residual functional capacity assessment must be reversed. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (reversing ALJ's Step-Four determination because it was not supported by the record).

## VI. Step-Five

The ALJ's defective Step-Four analysis necessitates the remand of her Step-Five determination for the sake of completeness. Connell argues the ALJ erred in failing to ask hypothetical questions concerning his impaired concentration and memory. The court disagrees.

It is true that Connell's medical records reflect impaired ability to concentrate. *See, e.g.*, R. at 138, 164. But the agency physician who examined Connell concluded that he had no serious problems with memory or understanding and that his impaired concentration allowed him to perform routine, repetitive tasks. R. at 160. The ALJ may adopt the agency physician's conclusion. *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) (*per curiam*). The court should not re-weigh the evidence. *Lopez*, 336 F.3d at 539. Accordingly, the ALJ's decision not to pose hypothetical questions regarding Connell's impaired concentration and memory was not in error. On remand, however, the ALJ is free to revisit her decision and to frame hypothetical questions as she sees fit.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is reversed as to the Step-Three and Step-Four analyses. This case is remanded to the ALJ for further proceedings.

ENTER:

*Suzanne R. Conlon*
Suzanne B. Conlon
United States District Judge

January 30, 2006